IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| APEX ADVANCED TECHNOLOGY LLC, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | )  Civil Action No. 1:21-cv-1400 (RDA/WEF) ) |
| RMSI PRIVATE LIMITED, *et al.*, | ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This matter comes before this Court on RMSI Private Limited and RMSI North America Inc.'s ("Defendants") Motion to Dismiss for lack of personal jurisdiction and failure to state a claim ("Motion"). Dkt. 20. This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering Defendants' Memorandum in Support of its Motion (Dkt. 21), Plaintiffs Apex Advanced Technology LLC and Cadsys Technologies LLC's ("Plaintiffs") Opposition (Dkt. 30), and Defendants' Reply (Dkt. 31), this Court DENIES the Motion to Dismiss for Lack of Personal Jurisdiction and GRANTS IN PART and DENIES IN PART the Motion to Dismiss for Failure to State a Claim for the reasons that follow.

I. BACKGROUND[1]

A. Factual Background

Plaintiffs filed a Complaint in this Court alleging six counts against Defendants: (1) violations of the Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA"); (2) misappropriation of trade secretions in violation of the Virginia Uniform Trade Secrets Act, Va. Code tit. 59.1, Ch. 26 ("VUTSA"); (3) statutory conspiracy in violation of Va. Code § 18.2-499; (4) common law conspiracy; (5) breach of contract; and (6) injunctive relief.

Plaintiffs Cadsys Technologies and Apex Advanced Technology, LLC are related U.S. companies operated by the same U.S. management team and owned by the same corporate parent, "Cadsys (India) Limited," located in India. Dkt. 11 ¶¶ 14, 16. Both Plaintiffs and their parent corporation are providers of geospatial information services ("GIS"), including providing, storing, and managing geographic-reference data and engineering solutions to telecommunications and other wireless carriers. *Id.* ¶ 17. The ProAct and ProWorks software systems ("Proprietary Information") are the underlying technical and engineering processes in these software tools. *Id.* ¶ 27. Plaintiffs and their parent corporation developed this Proprietary Information in India and the United States, which they use to sell technical and engineering services to corporations, including AT&T Services Inc. and Byers Engineering Company, two U.S. companies. *Id.* ¶¶ 18-20. All intellectual property rights, including rights to proprietary information developed in India, lie with Plaintiff Apex Advanced Technology LLC. *Id.* ¶ 21.

Defendant Private Limited ("RMSI-India") conducts business in the United States through RMSI-North America ("RMSI-NA"). *Id.* ¶ 10. Rajeev Kapoor is the chief executive of RMSI-

---

[1] For purposes of considering the Motion, the Court accepts all facts contained within Plaintiff's Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

NA; he also serves as the Chairman and Managing Director of RMSI-India and all its branches and subsidiaries in India, China, and the United States. *Id.* ¶¶ 11-12. Defendants compete against Plaintiffs in the same GIS market in the United States. *Id.* ¶ 13.

According to the allegations in the Amended Complaint, Plaintiffs have developed automated processes to manage large amounts of engineering and GIS data, methodologies to automate error identification and data cleansing of Engineering Drawings, and "fuzzy logic methodologies" to automate error identification. *Id.* ¶¶ 22-25. These processes, which are coded in the ProACT and ProWorks software systems, save significant time that would otherwise be spent on laborious and costly manual error identification. *Id.* ¶¶ 24, 26. In addition to their Proprietary Information, Plaintiffs have developed a Data Management Tool ("DMT"). Plaintiffs have sold DMT software to AT&T but have never relinquished ownership over the software. *Id.* ¶¶ 28-29.

Plaintiffs have kept their Proprietary Information secret by requiring technical staff to execute non-disclosure agreements, requiring the use of passwords, and keeping the source code, methodology, and know-how secret from the public and customers. *Id.* ¶¶ 30-33. Since December of 2018, Defendants have allegedly hired members of Plaintiffs' technical staff ("Cadsys Employees") who have direct knowledge of Plaintiff's Proprietary Information, have "called or otherwise solicited" Cadsys Employees, and have induced Cadsys Employees to disclose Plaintiff's Proprietary Information in breach of their non-disclosure agreements. According to Plaintiffs, Defendants have acquired knowledge of Plaintiff's Proprietary Information, and have used the Proprietary Information to benefit themselves in commerce. *Id.* ¶¶ 34-38. Moreover, Plaintiffs allege that Defendants knew that Cadsys Employees had each executed non-disclosure agreements and were under a duty not to disclose Plaintiffs' Proprietary Information. *Id.* ¶ 36.

Defendants entered into a contract with Byers Engineering Company to undertake GIS and engineering services for AT&T Services in December of 2018, and Plaintiffs allege Defendants are now using their Proprietary Information without consent to complete this contract, thus enriching themselves. *Id.* ¶¶ 40-43. Plaintiffs further allege that Defendants' website also claims that they use DMT and that the site falsely implies Defendants developed the software. *Id.* ¶¶ 44-46. On February 10, 2021, Plaintiffs asked Defendants to cease and desist from acquiring, using, or disclosing Plaintiffs' Proprietary Information or hiring Cadsys Employees. *Id.* ¶¶ 48-49. On March 12, 2021, Defendants allegedly responded with "scathing attacks and name-calling." *Id.* ¶ 50.

On March 15, 2016, Plaintiff, Apex Advanced Technology LLC, purchased assets from another company named Apex CoVantage LLC ("Apex-C"), which included rights to a Non-Disclosure and Non-Solicitation Agreement ("NDA") between Apex-C and RMSI India. *Id.* ¶¶ 52-54. The parties entered into that agreement on February 14, 2007. *Id.* ¶ 55. Plaintiffs allege that RMSI India has never given notice that it wants to terminate, or has actually terminated, the NDA. *Id.* ¶¶ 56-57. Neither has Apex-C ever indicated that it wishes to terminate, or has terminated, the NDA. *Id.* ¶ 58.

The NDA contains a non-compete clause at paragraph 4, stating that:

> Receiving Party agrees that it will not, during the term of this Agreement and for five (5) years after its termination, for whatever reason, use any of the Proprietary Information in any effort to compete with the Disclosing Party, including, but not limited to soliciting any of the Disclosing Party's customers disclosed during the term of this Agreement."

*Id.* ¶ 59. The Disclosing Party is identified as Apex-C and its subsidiaries. *Id.* ¶ 61. Apex-C assigned the NDA to Plaintiff Apex Advanced Technology LLC and sold its subsidiaries to Plaintiffs, and Apex-C's and Plaintiffs' customers include AT&T Services. *Id.* ¶¶ 62-64. Shortly

4

after signing the NDA, Apex-C disclosed to RMSI-India AT&T's identity as its customer, information related to AT&T facilities, engineering drawings, information related to AT&T wire centers located in the United States, and the DMT software and related information.  *Id.* ¶¶ 65-68.

As alleged in Plaintiffs' Amended Complaint, Defendants have solicited AT&T Services and have entered into a contract with Byer's Engineering Company to undertake Engineering and GIS projects for AT&T Services.  *Id.* ¶ 72.  Plaintiffs maintain that Defendants have used Plaintiff's Proprietary Information to solicit business from customers like NBNCo, Australia (through an intermediary), Kordia, and Apple Maps, thereby directly competing with Plaintiffs. *Id.* ¶ 73.

## B. Procedural Background

Plaintiffs first filed suit in this Court on December 17, 2021.  Dkt. 1.  Plaintiffs submitted an Amended Complaint on December 22, 2021.  Dkt. 2.  On February 25, 2022, Defendants moved to dismiss the Amended Complaint for lack of personal jurisdiction and for failure to state a claim.  Dkt. 20.  Plaintiffs then sought, and received, an extension of time to respond to Defendants' Motion to Dismiss, filing their opposition brief on March 28, 2022.  Dkt. 30.  On April 4, 2022, Defendants filed a reply brief in support of their Motion.  Dkt. 31.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(2) Standard

Federal Rule of Civil Procedure 12(b)(2) provides that a court may dismiss a case for lack of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).  When resolving a Rule 12(b)(2) motion, a court undertakes a two-step analysis.  First, a court looks to whether personal jurisdiction is authorized by state law.  *Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004).  Second, a court must find that the exercise of personal jurisdiction comports with the constitutional requirements of due process.

*Id.* Virginia's long-arm statute extends personal jurisdiction to the constitutionally permissible limits of the Due Process Clause of the Fourteenth Amendment. *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 176 (4th Cir. 2002). Accordingly, "[b]ecause Virginia's long-arm statute is intended to extend personal jurisdiction to the extent permissible under the due process clause, the statutory inquiry merges with the constitutional inquiry." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009).

When determining whether there is personal jurisdiction over a case, a district court "must accept as true the uncontroverted factual allegations in the plaintiff's complaint." *Companion Prop. & Cas. Ins. Co. v. Palermo*, 723 F.3d 557, 559 (5th Cir. 2013). When a court does not conduct an evidentiary hearing on personal jurisdiction, a case may be dismissed for lack of personal jurisdiction if the plaintiff has failed to make a *prima facie* showing. *See Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016). If such a showing is made, the defendant must "present a compelling case that the presence of some other considerations would render jurisdiction [so] unreasonable," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) as to "offend traditional notions of fair play and substantial justice," *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In evaluating the parties' requisite burdens, a court may rely on "motion papers, supporting legal memoranda, [] the allegations in the complaint," *Consulting Eng'rs*, 561 F.3d at 276, and "the contents of affidavits and any other relevant matter submitted by the parties to assist it in determining the jurisdictional facts," 5B Alan Wright & Arthur Miller, Fed. P. & Proc. § 1351, at 305 (3d ed. 2004).

B. Rule 12(b)(6) Standard

Additionally, to survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion brought under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted).

At the motion-to-dismiss stage, a plaintiff need only "allege facts sufficient to state all the elements of her claim," *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), and "the district court must 'accept as true all well-pled facts in the complaint and construe them in the light most favorable to [the plaintiff].'" *Dao v. Faustin*, 402 F. Supp. 3d 308, 315 (E.D. Va. 2019) (quoting *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015)). Still, "[c]onclusory allegations regarding the legal effect of the facts alleged" need not be accepted. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995); *see also E. Shore Mkts., Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) ("[W]hile we must take the facts in the light most favorable to the plaintiff, we need not accept the legal conclusions drawn from the facts . . . Similarly, we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."). And "[g]enerally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion." *Linlor v. Polson*, 263 F. Supp. 3d 613, 618 (E.D. Va. 2017) (citing *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015)).

### III. ANALYSIS

#### A. Personal Jurisdiction

Defendants first argue that Plaintiffs' Amended Complaint should be dismissed for lack of

personal jurisdiction as to Defendant RMSI-NA.  They argue that there is no basis for asserting general or specific personal jurisdiction over Defendant RMSI-NA, a New York corporation, in this case.  Defendants recite the minimum contacts factors that this Court uses to determine whether there is personal jurisdiction, concluding that each cuts against personal jurisdiction because Plaintiff RMSI-NA has no contacts with Virginia.  Dkt. 24 at 16-17.

As the parties invoking jurisdiction, Plaintiffs bear the burden of establishing its existence. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).  In this regard, Plaintiffs assert that all parties are bound by the NDA, emphasizing that when Apex Advanced Technology LLC purchased GIS business and assets from Apex-C, this purchase included the NDA with RMSI.  Under the NDA's terms, the "Receiving Party [RMSI] and its representatives will keep the Proprietary Information provided by the Disclosing Party [Apex-C and its subsidiaries] strictly confidential."  Dkt. 30-1.  Because RMSI-NA is a wholly owned subsidiary of RMSI, Plaintiffs contend that RMSI-NA is included in the terms of, and bound by, the NDA.  Importantly, the NDA also contains a forum-selection clause.  The "Governing Law and Jurisdiction Clause" provides that the "parties agree to submit to the jurisdiction of the state and federal courts located in the Commonwealth of Virginia with respect to any dispute arising from this Agreement."  *Id.* ¶ 13.

Therefore, the question before the Court is whether this forum-selection clause is enforceable.  "Under federal law, '[a] forum-selection clause is prima facie valid and should be enforced unless enforcement is . . . 'unreasonable' under the circumstances.'"  *Pee Dee Health Care, P.A. v. Sanford*, 509 F.3d 204, 213 (4th Cir. 2007) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)).  Whether a forum-selection clause is unreasonable turns on several factors, including whether "(1) [the clause's] formation was induced by fraud or over-reaching; (2) the complaining party 'will for all practical purposes be deprived of his day in court' because

of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) [the clause's] enforcement would contravene a strong public policy of the forum state.'" *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 651 (4th Cir. 2010) (quoting *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996)). Defendants do not attempt to argue that the forum-selection clause is unreasonable. They instead argue that it does not apply, suggesting that the NDA is no longer in effect, that RMSI-NA was not a "representative" of RMSI during the time period that the NDA was in effect, and that RMSI-NA does not fall within the "contemplated business relationship" between RMSI and Apex-C that was the subject of the NDA. Dkt. 33 at 9.

The Court does not find that the forum-selection clause is unreasonable. There is no suggestion that fraud or over-reach by any party prompted the clause's creation. Neither is there any risk that Defendants will be deprived of their day in court because of any inconvenience or unfairness of the forum, not to mention any grace inconvenience or unfairness. Finally, the Court does not find any fundamental unfairness in Virginia law that would deprive any party of a remedy or that enforcing the clause contravenes prevailing policy considerations. *See Sanford*, 509 F.3d at 213. Consequently, the forum-selection clause is *prima facie* valid, and this Court must therefore give it effect. The Court, taking all well-pleaded allegations in the Amended Complaint as true, also declines to find that the NDA itself is no longer in effect or that RMSI-NA is exempt from the forum-selection clause. Accordingly, the Court denies Defendants' motion to dismiss to the extent it is predicated on alleged lack of personal jurisdiction as to Defendant RMSI-NA.

B. Federal Defend Trade Secrets Act and the Virginia Uniform Trade Secrets Act

Plaintiffs allege Defendants violated the Federal Defend Trade Secrets Act ("DTSA") and the Virginia Uniform Trade Secrets Act ("VUTSA") in Counts I and II of the Amended Complaint,

9

respectively. "[T]he applicable standards under the DTSA and . . . the VUTSA are nearly identical." *OROS, Inc. v. Dajani*, No. 1:19-cv-351, 2019 WL 2361047, at *2 (E.D. Va. June 4, 2019). To plead a plausible claim of misappropriation of trade secrets under the DTSA and VUTSA, "(1) the information in question must constitute a trade secret, and (2) that trade secret must have been misappropriated." *MicroStrategy Inc. v. Business Objects, S.A.*, 331 F. Supp. 2d 396, 416 (E.D. Va. 2004). The DTSA defines "trade" secret in expansive terms, including within that term:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
>
>> (A) the owner thereof has taken reasonable measures to keep such information secret; and
>>
>> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information . . . .

18 U.S.C. § 1839(3). The VUTSA defines trade secret in similarly broad terms in Va. Code § 59.1-336:

> 'Trade secret' means information, including but not limited to, a formula, pattern, compilation, program, device, method, technique, or process, that:
>
>> 1. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>>
>> 2. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

In light of these broad definitions, "'[t]he case law is clear that just about anything can constitute

a trade secret under the right set of facts,' so long as the information (i) has independent economic value by virtue of its being a secret and (ii) is subject to reasonable efforts to maintain that secrecy." *Dajani*, 2019 WL 2361047, at *3 (quoting *Business Objects*, 331 F. Supp. at 416).

Plaintiffs' Amended Complaint identifies specific Proprietary Information, including "automated processes" designed to manage GIS data, a methodology that automates error identification and data cleansing of engineering drawings, particular software systems, and the DMT software. *See* Dkt. 11 ¶¶ 22-29. Under established Virginia precedent, "[s]oftware components . . . may be trade secrets covered by the [VTUSA]." *MicroStrategy v. Li*, 268 Va. 249, 263 (2004). Furthermore, Plaintiffs have plausibly pleaded that the Proprietary Information "(1) had economic value from not being generally known and readily ascertainable, and (2) that reasonable efforts were made to maintain its secrecy." *Softech Worldwide LLC v. Internet Tech. broadcasting Corp.*, No. 1:10-cv-651, 2010 WL 4645791, at *5 (E.D. Va. Nov. 8, 2010). Drawing all reasonable inferences in Plaintiffs' favor, as the Court must at this stage of litigation, the Court concludes that the Amended Complaint contains the required factual specificity necessary for this Court to infer that Plaintiffs' Proprietary Information may qualify for trade secret protection under both the DTSA and the VUTSA.

Turning to whether the Amended Complaint plausibly pleads misappropriation of trade secrets, the DTSA and its state-law analogue, the VUTSA, recognize misappropriation of trade secrets under two sets of circumstances: (1) improper acquisition of a trade secret; or (2) disclosure or use of a trade secret. *See* 18 U.S.C. § 1839(5); Va. Code § 59.1-336. "To properly plead Defendants' misappropriation of their trade secrets, Plaintiffs need only allege that (1) Defendants acquired, disclosed, or used a trade secret developed by Plaintiffs through 'improper means;' and (2) Defendants knew or had reason to know that their knowledge of the trade secret was either

11

acquired under circumstances giving rise to a duty to maintain its secrecy or derived through a person owing such a duty to Plaintiffs. *See Space Sys./Loral, LLC v. Orbital ATK, Inc.*, 306 F. Supp. 3d 845, 855 (E.D. Va. 2018). "'Improper means,' in turn, is defined to include 'theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means' but does not include 'reverse engineering, independent derivation, or any other lawful means of acquisition.'" *Dajani*, 2019 WL 2361047, at *4 (citing 18 U.S.C. § 1839(6)). The VUTSA's definitions largely track those of the federal statute. *See* Va. Code § 59.1-336.

In the Amended Complaint, Plaintiffs allege that Defendants hired Cadsys employees, induced them to disclose the Proprietary Information in breach of their non-disclosure agreements, and continue to disclose and use Plaintiffs' trade secrets in their business operations despite Plaintiffs' cease and desist notice. *See* Dkt. 11 ¶¶ 34-51. Moreover, Plaintiffs have identified Defendants as the alleged wrongdoers, described the events and conduct involved in the alleged scheme to misappropriate, identified a timeline within which they believe the misappropriation occurred, alleged the locations where and means by which Defendants allegedly misappropriated trade secrets, and have articulated the nature of their injuries. Construing these and other allegations set forth in the Complaint as true, Plaintiffs have plausibly alleged misappropriation of trade secrets under both the DTSA and the VUTSA. *See id.* ¶¶ 22-29, 34-51, 72-73, 87-100, 110-124. Therefore, the Court will not dismiss Counts I or II at the pleading stage.

### C. Statutory and Common Law Conspiracy

Defendants also seek to dismiss the statutory and common law claims of conspiracy Plaintiffs allege in Counts III and IV of the Amended Complaint. Defendants advance three arguments in favor of dismissal. First, they argue that because Plaintiffs fail to state a valid

misappropriation of trade secret claim, their conspiracy claims also fail because there is no predicate unlawful act.  Second, Defendants contend that the DTSA and VUTSA preempt any common law claim based on misappropriation of trade secrets.  Third, Defendants assert that the intra-corporate immunity doctrine bars Plaintiffs' conspiracy claims.

Because the Court finds that Plaintiffs have plausibly pleaded claims under both the DTSA and the VUTSA, Defendants' first argument for dismissal fails.  Similarly, this Court has held that preemption arguments like the one Defendants make should generally not bar claims at the motion-to-dismiss stage, "because without the benefit of a factual record, the Court cannot conclusively determine whether the information is a trade secret."  *Microstrategy Servs. Corp. v. OpenRisk, LLC*, No. 1:14-cv-1244, 2015 WL 1221263, at *6 (E.D. Va. Mar. 17, 2015) (calling application of the VUTSA's preemption provision to a conspiracy claim at the pleading stage "premature"); *see also Trident Prods. & Servs, LLC v. Canadian Soiless Wholesale, Ltd.*, 859 F. Supp.2d 771, 779 (E.D. Va. 2012) (explaining that determining whether a trade secret is "readily ascertainable," an element for proving a VUTSA claim, is a "heavily fact-dependent" question).

Defendants' intra-corporate immunity doctrine argument advances from the premise that a conspiracy cannot exist between agents of a corporation and the corporation itself.  *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 544 (4th Cir. 1997) (citing *Griffith v. Electrolux Corp.*, 454 F. Supp. 29, 32 (E.D. Va. 1978)).  The Amended Complaint sets forth allegations in support of Plaintiffs' conspiracy claims suggesting that a conspiracy exists between the two RMSI entities, which are managed by the same agent, Rajeev Kapoor.  *See* Dkt. 11 ¶¶ 129, 132, 137.  Yet the intra-corporate immunity doctrine generally precludes such conspiracy claims, and Plaintiffs in opposing Defendants' motion fail to explain why the doctrine should not bar the claims asserted here.  Notably, it is unclear whether any exception to the intra-corporate immunity doctrine might apply

13

to the facts of this case. *See NorthStar Aviation, LLC v. Alberto*, 332 F. Supp. 3d 1007, 1017 n.9 (E.D. Va. 2018) (recognizing an "independent personal stake" exception to the intra-corporate immunity doctrine). On this basis, the Court concludes that Plaintiffs' conspiracy claims as alleged in the Amended Complaint must be dismissed.

### D. Breach of Contract Claim

Plaintiffs bring a claim for breach of contract in Count V of the Amended Complaint, alleging that Defendants breached the terms of the NDA when they used Plaintiffs' Proprietary Information to compete with Plaintiffs. Dkt. 11 ¶¶ 140-49. Under Virginia law, a breach of contract claim requires (1) a legally enforceable obligation of a defendant to a plaintiff; (2) breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation. *Filak v. George*, 267 Va. 612, 619 (2004).

Contrary to Defendants' argument, the Court finds that the allegations of the Amended Complaint are sufficient to infer, at the motion-to-dismiss stage, that all parties are bound by the NDA. As this Court has held, "after-acquired" subsidiaries may be included within a contract's definition of "subsidiary." *Biedermann Techs. GmbH & CO. KG v. K2M, Inc.*, 528 F. Supp. 3d 407, 435-36 (E.D. Va. 2021). To the extent Defendants' arguments regarding the applicability of the NDA to any party turns on other extrinsic evidence, a fully developed factual record either at the summary judgment stage or at trial will permit those theories to be tested. Furthermore, the Court finds that Plaintiffs plausibly plead a violation of the NDA's non-compete and non-solicitation clause, which prohibits use of "any of the Proprietary Information in any effort to compete with the Disclosing Party, including, but not limited to soliciting any of the Disclosing Party's customers disclosed during the term of this Agreement." Dkt. 30-1.

Viewing all facts alleged in the Amended Complaint in the light most favorable to Plaintiffs, the Court concludes that they have alleged a breach of a legally enforceable obligation and damages resulting from that injury. *See Filak*, 267 Va. at 619. Thus, the Court denies Defendants' motion as to Count V of the Amended Complaint.

### E. Injunctive Relief

In Count VI of the Amended Complaint, Plaintiffs bring a claim of injunctive relief. Dkt. ¶¶ 150-64. Plaintiffs correctly observe that Federal Rule of Civil Procedure 65 "permits a party to seek injunctive relief against an adverse party." *Id.* ¶ 151. But "[a]n injunction is a form of remedy, not an independently cognizable cause of action." *Dajani*, 2019 WL 2361047, at *5. What is more, Plaintiffs do not attempt to establish the necessary factors for overcoming the high bar of preliminary injunctive relief. Plaintiffs cannot maintain Count VI as a separate cause of action, and the Court must dismiss this separate claim. *See id.* (stating that "dismissal of such a stand-alone claim for injunctive relief is appropriate"). The dismissal of this claim will be without prejudice to Plaintiffs' ability to later pursue any remedy authorized by law or equity.[2]

### IV. CONCLUSION

For the reasons stated above, it is hereby ORDERED that Defendants' Motion to Dismiss (Dkt. 20) is GRANTED IN PART and DENIED IN PART. The Motion is denied to the extent Defendants seek to dismiss the Amended Complaint for lack of personal jurisdiction; and it is

FURTHER ORDERED that the Motion (Dkt. 20) is GRANTED as to Counts III, IV, and VI of the Amended Complaint, which are DISMISSED WITHOUT PREJUDICE; and it is

---

[2] The Court does not address the issue of exemplary damages or attorneys' fees at this stage of litigation, but the parties may renew their arguments as to those issues at summary judgment.

15

FURTHER ORDERED that the Motion (Dkt. 20) is DENIED as to Counts I, II, and V of the Amended Complaint.

The Clerk of the Court is directed to forward a copy of this Memorandum Opinion and Order to all counsel of record.

It is SO ORDERED.

Alexandria, Virginia
September 30, 2022

/s/
Rossie D. Alston, Jr.
United States District Judge